IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-00088-PAB-SKC

JANE DOE, a minor, by and through her mother, JOAN DOE,

    Plaintiff,

v.

BRIGHTON SCHOOL DISTRICT 27J,

    Defendant.

_____

**ORDER**
_____

This matter is before the Court on the Complaint [Docket No. 1] and Plaintiff's Brief in Support of Judgment on Administrative Record [Docket No. 28] of plaintiff Jane Doe, a minor, by and through her mother, Joan Doe. Plaintiff appeals the decision of the State of Colorado, Office of Administrative Courts administrative law judge ("ALJ"). Docket No. 1 at 2, ¶ 3. On October 31, 2019, the ALJ issued an order finding that defendant did not violate the Individuals with Disabilities Education Act ("IDEA") as implemented by 34 C.F.R. § 300.510 and 1 C.C.R. 301-8, § 2220-R-6.02. R. at 361.[1] Plaintiff argues that the ALJ erred in (1) finding that plaintiff was not a child with a disability under the IDEA; (2) finding that Brighton School District 27J (the "school district") did not violate its duty to identify, locate, and evaluate plaintiff as a child with a disability pursuant to 34 C.F.R. § 300.111; and (3) ignoring the issue of whether the

---

[1] The Court cites to the page number found at the bottom right of the administrative record, Docket No. 27, throughout this order as "R. at ___."

school district failed to perform an evaluation of plaintiff as required by the IDEA. Docket No. 28 at 8-15. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(3)(A).

## I. BACKGROUND[2]

S.M. was a junior in high school at Brighton High School (the "school") in September 2018 when she was sexually assaulted by a male student, E.D. R. at 343-44, ¶¶ 1, 4. S.M. and her family have since moved to Texas. R. at 344, ¶ 1.

On October 30, 2018, S.M.'s chemistry teacher sent her to the school counselor, Ryan Sullivan, because S.M. was crying quietly in class and did not seem like herself. *Id.*, ¶ 2. The same day, S.M. met with a detective about a sexual assault by E.D. on a different female student. *Id.*, ¶ 3. During the course of the interview with the detective, S.M. disclosed that E.D. had sexually assaulted her on September 16 or 17, 2018. *Id.*, ¶ 4. S.M.'s mother, J.Y., was present for the interview; this was the first time J.Y. learned of the assault on S.M. *Id.* As a result of the assault, S.M. was anxious, depressed, and suicidal. R. at 345, ¶ 10. Mr. Sullivan called J.Y. on October 31, 2018 to inform her that S.M.'s chemistry teacher had referred S.M. to Mr. Sullivan and that he wanted to offer his support. *Id*, ¶ 11. J.Y. told Mr. Sullivan that something terrible had happened to S.M. but, in accordance with the direction of the detective, did not tell Mr. Sullivan what it was. *Id.* On November 5, 2018, S.M. had a forensic interview with law

---

[2] The Court draws these facts from the factual findings of the ALJ, which appear to be largely unchallenged by the parties. *See L.B. ex rel. K.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 974 (10th Cir. 2004) (stating that the district court must give "due weight" to the ALJ's findings of fact, which are considered *prima facie* correct). To the extent plaintiff disagrees with any of the ALJ's factual findings, the findings are discussed herein.

enforcement, which was more difficult than expected. *Id.*, ¶ 12. The same day, at 4:49 p.m., J.Y. emailed Mr. Sullivan to inform him that the issue with S.M. was larger than she had thought and there were concerns for S.M.'s mental health and safety. *Id*. Between November 6 and 9, J.Y. spoke with the following school personnel about the issue: Mr. Sullivan; David Smith, an assistant principal; Jenelle Weaver, the assistant principal in charge of special education; Dr. Richard Patterson, a School District Director in Student Achievement; and Desiree Quintanilla, a coordinator of homebound services. R. at 346-47, ¶¶ 14-24. On November 8, 2018, Ms. Quintanilla informed J.Y. that the school had suspended E.D. R. at 347, ¶ 24. In a phone call on November 9, 2018 among J.Y., Ms. Quintanilla, and Ms. Weaver, they reached an agreement that S.M. would take math and chemistry, her two weakest subject, at school, but would take the remainder of her classes online. R. at 346-47, ¶¶ 20, 27.

On November 14, 2018, the school convened a meeting with S.M., J.Y., Mr. Smith, Ms. Weaver, Mr. Sullivan, Ms. Quintanilla, and Stephanie Mitchell (the school's online coordinator) to discuss S.M.'s plan for the remainder of the semester. R. at 347-48, ¶ 31. At the meeting, everyone agreed that S.M. would come to school for math and chemistry, but take literature and history online. R. at 348, ¶ 32. They agreed to work out a way for S.M. to finish catering and choir, her two electives. *Id.* J.Y. brought up the possibility of S.M. being on an Individualized Education Plan (IEP) or 504 plan,[3]

---

[3] J.Y. also brought up an IEP or 504 plan on November 9, 2018 in a phone call with Ms. Quintanilla and Ms. Weaver. R. at 347, ¶ 29. "[A]n IEP '[p]rovides individualized special education and related services to meet a child's unique needs,' whereas a 504 plan '[p]rovides services and changes to the learning environment to enable students to learn alongside their peers.'" *R.F. ex rel. R.F. v. Southern Lehigh Sch. Dist.*, 2019 WL 3714484, at *8 n.18 (E.D. Pa. Aug. 7, 2019) (quoting The

but Ms. Weaver responded that the focus was on meeting S.M.'s immediate needs and they could revisit an IEP or 504 plan in December when S.M. had stabilized. *Id.*, ¶ 33. On November 16, 2018, S.M.'s private health counselor diagnosed her with post-traumatic stress disorder ("PTSD"). *Id.*, ¶ 38.

J.Y. and S.M. had another meeting with Mr. Smith and Ms. Weaver on November 28, 2018 to devise a plan to support S.M. in math and chemistry; S.M.'s math and chemistry teachers were also present at the meeting. R. at 348-49, ¶ 41. J.Y. indicated that S.M. wanted to take both of those subjects in person but be on campus as little as possible, so S.M. was exempted from chemistry labs. R. at 349, ¶ 43. On December 4, 2018, E.D. appeared on the school campus despite his suspension. *Id.*, ¶ 45. Ms. Weaver called J.Y. to let her know, and at that point J.Y. decided that S.M. could not be safe at school and would not return to the campus. *Id.*

On December 11, 2018, J.Y. spoke with Ms. Weaver and expressed concern regarding S.M.'s ability to progress in chemistry and math; Ms. Weaver suggested that S.M. take an "incomplete" in chemistry and math for the fall semester, which she did. R. at 349-50, ¶¶ 48, 50-51. On January 8, 2019, J.Y. asked, and the school agreed, for S.M. to be a homebound[4] student for the spring semester. R. at 350, ¶ 53. S.M.

---

*Difference Between IEPs and 504 Plans*, UNDERSTOOD, https://www.understood.org/en/school-learning/special-services/504-plan/the-difference-between-ieps-and-504-plans (last visited July 31, 2019)).  The process for an IEP is more involved than that of a 504 plan. *Sharonda P. ex rel. T.P. v. Kijakazi*, 2022 WL 766704, at *4 n.7 (N.D. Ga. Mar. 13, 2022).

[4] Homebound services allow a child with a medical or other condition to receive instruction outside of the school setting, typically at home, to accommodate the condition. R. at 231.

decided to complete her fall coursework for math and chemistry and earned a "D" in both due to her missing material presented in class and not turning in work. *Id.*

On January 23, 2019, plaintiff filed a due process complaint against the school district. R. at 351, ¶ 62. Mary Gomez, the Special Education Director at the school, then reached out to J.Y. to obtain her consent to evaluate S.M. to determine if she was a student with a disability who qualified for an IEP or if she needed a 504 plan. *Id.* Ms. Gomez brought in Susan Baber as S.M.'s homebound provider. *Id.*, ¶ 63. Ms. Baber, a high school special education and English teacher, met with S.M. on Saturday mornings from mid-March 2019 to the end of May 2019. *Id.*, ¶¶ 63, 65-66. Ms. Baber did not believe that S.M. needed an IEP. R. at 352, ¶ 69 . Ms. Baber has participated in over 500 evaluations to determine whether a child is eligible for an IEP. *Id.*, ¶ 71. Dr. Kristen Schrader, a licensed psychologist who participates in 30 to 60 special education eligibility evaluations annually, also evaluated S.M. R. at 353, ¶ 86-87. Dr. Schrader conducted three hours of testing and noticed that, while S.M. was sad and withdrawn, she was able to complete the assessments. R. at 354, ¶ 91. Dr. Schrader did not believe that S.M. needed an IEP. R. at 355, ¶ 106.

On April 4, 2019, Dr. Schrader and Ms. Baber presented their evaluation summaries to J.Y. and her legal counsel. R. at 356, ¶ 111. During the meeting, the participants completed a form for Determination of Eligibility: Serious Emotional Disability. *Id.*, ¶ 112. The participants, with the exception of J.Y. and her counsel, felt that the answer to "The child *can* receive reasonable educational benefit from general education alone. (Answer must be 'no' in order for the child to be eligible for services.)"

was "yes." *Id.*, ¶¶ 112-13.  After a discussion regarding the question, J.Y. and her counsel left the meeting.  R. at 356-57, ¶ 117.  The other participants believed that S.M. would benefit from a 504 plan and developed one for her.  R. at 357, ¶ 118.

The ALJ found that S.M. was not a child with a disability under the IDEA.  R. at 358.  The ALJ additionally found that, even if S.M. was a child with a disability, the school district did not violate its child-find duty[5] with respect to S.M.  R. at 360.  Plaintiff appeals the findings of the ALJ.  Plaintiff filed an opening brief, Docket No. 28, defendant responded, Docket No. 31, and plaintiff replied.  Docket No. 34.

## II.   LEGAL STANDARD

### A.   The Individuals With Disabilities Education Act

The IDEA conditions federal education funding on a state's compliance with certain requirements intended to ensure that states identify, evaluate, and serve children with disabilities.  *See* 20 U.S.C. §§ 1412, 1414, 1416.  One such requirement is that states establish policies and procedures to ensure that a free appropriate public education ("FAPE") is made available to every child between the ages of 3 and 21 who is determined to have a disability within the meaning of the IDEA.  20 U.S.C. § 1412(a)(1).  A FAPE is defined as

>special education and related services that –

---

[5] The IDEA requires school districts to develop and implement procedures for locating and evaluating children who may be eligible for "special education" services under the IDEA.  20 U.S.C. § 1412(a)(3).  This affirmative obligation is known as "child find."  The child find "duty is triggered when the [District] has reason to suspect a disability, and reason to suspect that special education services may be needed to address that disability."  *D.T. ex rel. Yasiris T. v. Cherry Creek Sch. Dist. No. 5.*, No. 20-cv-00706-LTB-SKC, 2021 WL 3134168, at *8 (D. Colo. June 23, 2021) (internal quotation marks omitted).

>  (A) have been provided at public expense, under public supervision
>  and direction, and without charge;
>  (B) meet the standards of the State educational agency;
>  (C) include an appropriate preschool, elementary school, or
>  secondary school education in the State involved; and
>  (D) are provided in conformity with the individualized education
>  program required under section 1414(d) of this title.

20 U.S.C. § 1401(9).  Thus, "[a] FAPE consists of both 'special education' and 'related services.'"  *Jefferson Cnty. Sch. Dist. R-1 v. Elizabeth E.*, 798 F. Supp. 2d 1177, 1179 (D. Colo. 2011), *aff'd*, 702 F.3d 1227 (10th Cir. 2012) (citing 20 U.S.C. § 1401(9)). "Special education" is defined as "specially designed instruction . . . to meet the unique needs of a child with a disability," while "related services" include "developmental, corrective, and other supporting services . . . as may be required to assist a child with a disability to benefit from special education."  20 U.S.C. §§ 1401(29), 1401(26)(A).  "A school district satisfies its obligation to provide a FAPE to a disabled child 'by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction.'"  *Elizabeth E.*, 798 F. Supp. 2d at 1180 (quoting *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 203 (1982)).

The first step in making a FAPE available is to provide a child who is suspected of having a disability with an appropriate evaluation to determine whether the child is eligible to receive a FAPE.  *See* 34 C.F.R. § 300.8(a)(1)-(2).  Eligibility is a two-step analysis that determines: (1) whether the child meets one or more of thirteen disability categories, and; (2) whether the child requires special education services as a result of that disability.  *Id*. § 300.8(a)(1).  The IDEA mandates that school districts have the affirmative obligation to ensure that any child with a disability who needs special

education and related services is "identified, located, and evaluated." 20 U.S.C. § 1412(a)(3)(A); 34 C.F.R. § 300.111(a)(1)(i). This obligation extends to all children who are "suspected of being a child with a disability . . . in need of special education, even though they are advancing from grade to grade." 34 C.F.R. § 300.111(c)(1).

### B. Standard of Review

In reviewing the ALJ decision, the Court "shall receive the records of the administrative proceedings;" "shall hear additional evidence at the request of a party;" and, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). The Court reviews legal challenges *de novo*, without deference. *See O'Toole ex rel. O'Toole v. Olathe Dist. Schs. Unified Sch. Dist. No. 233*, 144 F.3d 692, 699 (10th Cir. 1998). However, "though the statute specifies that review is *de novo*, the Supreme Court has interpreted the requirement that the district court receive the administrative record to mean that 'due weight' must be given to the administrative proceedings, the fact findings of which are considered prima facie correct." *Thompson R2-J Sch. Dist. v. Luke P., ex rel. Jeff P.*, 540 F.3d 1143, 1150 (10th Cir. 2008) (citation and quotation marks omitted).

## III. ANALYSIS

### A. Whether S.M. is a Child with a Disability

A "child with a disability" is a child with one of thirteen qualifying disabilities "and who, by reason thereof, requires special education and related services." 20 U.S.C. § 1401(3); 34 C.F.R. § 300.8. As relevant here, a "child with a disability" includes a child suffering from a serious emotional disability ("SED"). 34 C.F.R. § 300.8(a). An

SED is defined as:

> [A] condition exhibiting one or more of the following characteristics over a long period of time and to a marked degree that adversely affects a child's educational performance:
> (A) An inability to learn that cannot be explained by intellectual, sensory, or health factors.
> (B) An inability to build or maintain satisfactory interpersonal relationships with peers and teachers.
> (C) Inappropriate types of behavior or feelings under normal circumstances.
> (D) A general pervasive mood of unhappiness or depression.
> (E) A tendency to develop physical symptoms or fears associated with personal or school problems.

34 C.F.R. § 300.8(c)(4)(i).  The ALJ found that S.M. did not meet categories (A), (B), (C), or (E), but did have a pervasive mood of unhappiness and depression after the assault.  R. at 358-59.  Under the applicable Colorado regulations, as a result of the child's SED, the child must exhibit one of the following:

> (i) Impairment in academic functioning as demonstrated by an inability to receive reasonable educational benefit from general education which is not primarily the result of intellectual, sensory, or other health factors, but due to the identified serious emotional disability.
> (ii) Impairment in social/emotional functioning as demonstrated by an inability to build or maintain interpersonal relationships which significantly interferes with the child's social development.  Social development involves those adaptive behaviors and social skills which enable a child to meet environmental demands and assume responsibility for his or her own welfare.

Colorado's Exceptional Children's Education Act, 2220 Rule 2.08(3)(b), 1 C.C.R. 301-8.  The ALJ found that there was insufficient evidence to establish that S.M. met either of these criteria.  R. at 359.  The ALJ instead found that "SM demonstrated the ability to receive reasonable educational benefits from general education and when she did attend school following the assault, she was well behaved, respectful and demonstrated an ability to interact appropriately with her peers."  *Id.*

9

Additionally, to qualify as a child with an SED, there must be documentation of all of the following:

> (i) A variety of instructional and/or behavioral interventions were implemented within general education and the child remains unable to receive reasonable educational benefit from general education.
> (ii) Indicators of social/emotional dysfunction exist to a marked degree; that is, at a rate and intensity above the child's peers and outside of his or her cultural norms and the range of normal development expectations.
> (iii) Indicators of social/emotional dysfunction are pervasive, and are observable in at least two different settings within the child's environment. For children who are attending school, one of the environments shall be school.
> (iv) Indicators of social/emotional dysfunction have existed over a period of time and are not isolated incidents or transient, situational responses to stressors in the child's environment.

Colorado's Exceptional Children's Education Act, 2220 Rule 2.08(3)(c), 1 C.C.R. 301-8.

The ALJ found that S.M. did not have all four indicators because (1) "the credible evidence established that her dysfunction was a situational response to the assault and the bullying that she endured from other students"; and (2) S.M. "was able to receive reasonable educational benefit from general education and her social/emotional dysfunction was not at a rate or intensity outside of normal developmental expectations." R. at 359. Plaintiff argues that this conclusion was in error and that S.M. meets each of the above criteria. Docket No. 28 at 9-13.

Plaintiff first argues that S.M. was unable to progress academically in math and chemistry within general education. *Id.* at 10. Plaintiff argues that the ALJ's reliance on S.M.'s passing grades was in error because the record reflected that S.M.'s grades were adversely affected. *Id.* Plaintiff additionally argues that an ALJ's determination that a student is not disabled because she continued to receive passing grades was contrary to law. *Id.* at 11. The ALJ noted that S.M. completed the fall semester of her

junior year with a grade point average of 2.8, which was higher than her grade point average for the spring semester of her freshman and sophomore years. R. at 350, ¶ 52. However, the ALJ did not merely rely on S.M.'s passing grades to find that she was not a child with an SED. Instead, the ALJ considered the reports and testimony of Ms. Baber and Dr. Schrader. R. at 359-60. Additionally, grades can be an indicator of progress. *Cf. Mr. P. v. W. Hartford Bd. of Educ.*, 885 F.3d 735, 759 (2d Cir. 2018) (finding that, while not dispositive, child's steady and timely progression through each grade at an alternative high school indicated that child had made "substantial progress" and was receiving a FAPE); *Lisa M. v. Leander Indep. Sch. Dist.*, 924 F.3d 205, 216 (5th Cir. 2019) ("[W]hile grades are a consideration in determining whether special education services are necessary, they should not be the exclusive one." (internal quotation marks and citation omitted)). S.M. had historically been a "C" student in math and science, R. at 346, ¶ 20, and her grade dropped to a "D" for these subjects in the fall 2018 semester. R. at 350, ¶ 53. Despite this drop, the Court agrees with the ALJ that, though S.M. had difficulty in math and chemistry, the evidence establishes that she was able to progress in them in a general education setting.

Plaintiff argues that she could not receive reasonable education benefit from general education alone. Docket No. 28 at 12. Plaintiff argues that her grades in math and science suffered and the 504 plan the school district came up with shows that she required special education because it states that she needs specialized instruction in coping strategies. *Id.*

"'Special education' is 'specially designed instruction . . . to meet the unique needs of a child with a disability'; 'related services' are the support services 'required to

11

assist a child . . . to benefit from' that instruction." *Endrew F. ex rel. Joseph F. v. Douglas Cnty Sch. Dist. RE-1*, 137 S. Ct. 988, 994 (2017) (quoting 20 U.S.C. §§ 1401(26), (29)). Defendant states that the Colorado Department of Education does not consider homebound instruction to be a form of special education. Docket No. 31 at 11 n.6. Plaintiff does not argue that her need for homebound education is why she required special education. *See generally* Docket Nos. 28, 34. Instead, plaintiff focuses on the criteria in her 504 plan and deteriorating grades. *See* Docket No. 28 at 12.

"While the line between 'special education' and 'related services' may be murky, case law suggests that where a child is being educated in the regular classrooms of a public school with only minor accommodations and is making educational progress, the child does not 'need' special education within the meaning of the IDEA." *William V. ex rel. W.V. v. Copperas Cove Indep. Sch. Dist.*, 774 F. App'x 253, 254 (5th Cir. 2019) (unpublished). The Court agrees with the ALJ's determination that S.M. received related services and accommodations, rather than a special education. *See* R. at 360. The 504 plan's provision regarding coping strategies was a minor accommodation and does not qualify as a special education. *See C.M. ex rel. Jodie M. v. Dep't of Educ.*, 476 F. App'x 674, 677 (9th Cir. 2012) (unpublished) ("C.M. provides no support for her claim that some of the specific modifications in her 504 plan, including the READ 180 program, as well as the pre-algebra course and math lab, were 'specialized instruction' within the meaning of the IDEA."). The Court rejects plaintiff's arguments and finds that plaintiff was not a child with a disability; the school district accordingly did not breach

the IDEA in so determining.

### B.  Child Find Duty and Procedural Violations

Plaintiff argues that the school violated its "child-find" duty by failing to evaluate her for a disability until after J.Y. filed a due process complaint.  Docket No. 28 at 13-14.  Plaintiff also argues that the school violated the IDEA by not conducting an evaluation within 60 days after J.Y. inquired about a 504 plan and IEP.  *Id.* at 14-16.  The Court rejects both of these arguments.

First, because S.M. was not a child with a disability, the school district did not violate its child-find duty by failing to evaluate her until the spring 2019 semester.  *See D.G. v. Flour Bluff Indep. Sch. Dist.*, 481 F. App'x 887, 891 (5th Cir. 2012) (unpublished) (rejecting the argument that a school district's "failure to evaluate [a student] for special education prior to November 2009, his tenth-grade year, was a statutory violation for which he should recover, regardless of whether he ultimately was eligible for special education"); *Durbrow v. Cobb Cnty. Sch. Dist.*, 887 F.3d 1182, 1189 (11th Cir. 2018) ("[B]ecause Connor was not a 'child with a disability,' the CCSD did not owe him a child-find duty.").

Second, even assuming that the delay in evaluating S.M. was a procedural violation of the IDEA, plaintiff is not entitled to relief.  A procedural violation of the IDEA entitles a plaintiff to relief only if it: "(I) impeded the child's right to a [FAPE]; (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a [FAPE] to the parents' child; or (III) caused a deprivation of educational benefits."  20 U.S.C. § 1415(f)(3)(E)(ii).  Plaintiff has not

shown how any of these criteria are met.  The Court has found that the school did not deny S.M. a FAPE, plaintiff has not shown how the delay significantly impeded J.Y.'s opportunity to participate in the decisionmaking process, and the Court has not found a deprivation of any educational benefits.  Accordingly, even assuming an IDEA procedural violation, plaintiff is not entitled to relief.

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that the decision of the ALJ is **AFFIRMED**.  It is further

**ORDERED** that this case is closed.


DATED September 6, 2022.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge